# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. GRADFORD, <br><br> Plaintiff, <br><br> v. <br><br> STANISLAUS PUBLIC SAFETY CENTER, et al., <br><br> Defendants. | 1:17-cv-01248-DAD-GSA-PC <br><br> **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED ON PLAINTIFF'S EXCESSIVE FORCE CLAIM AGAINST DEFENDANT SERGEANT FLORRES, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED FOR VIOLATION OF RULE 18(a)** <br><br> **(ECF No. 15.)** <br><br> **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

## I. BACKGROUND

William J. Gradford ("Plaintiff") is a former prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On September 18, 2017, Plaintiff filed the Complaint commencing this action. (ECF No. 1.) On August 9, 2018, the court screened the Complaint and issued an order dismissing the Complaint for violation of Rule 18(a) of the Federal Rules of Civil Procedure, with leave to amend. (ECF No. 14.) On August 22, 2018, Plaintiff filed the First Amended Complaint, which is now before the court for screening. 28 U.S.C. § 1915.

1

## II. SCREENING REQUIREMENT

The *in forma pauperis* statute provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently out of custody. The events at issue in the Complaint allegedly occurred at the Stanislaus County Public Safety Center in Modesto, California, when Plaintiff was detained there as a pretrial detainee in the custody of the Stanislaus County Sheriff. Plaintiff names as defendants Lieutenant Kirt, Sergeant Florres, and Deputy Freddie (collectively, "Defendants").

A summary of Plaintiff's allegations follows.

### Cover-up of Retaliation -- Lieutenant Kirt

In 2017, Defendant Lt. Kirt, Facility Commander, attempted to cover up his deputies' retaliation against Plaintiff for reporting that Deputy Teixeira [not a defendant] had thrown inmate Francisco Ibanez, Jr., against a wall while inmate Ibanez was unresponsive and having a seizure on the floor. Deputies Teixeira and McCarthy [not defendants] threatened Plaintiff and other inmates not to say anything. Plaintiff spoke up. Deputy McCarthy said, "Gradford, if you know what's good for you, you will keep your mouth shut." First Amended Complaint (FAC), ECF No. 15 at 7-8. During the following months, Deputies Teixeira and McCarthy acted on their threats against Plaintiff through other deputies. Plaintiff believes the retaliation by deputies will continue upon his release from prison.

Plaintiff repeatedly complained to Lt. Kirt about abuse and continuing revenge by his deputies. Instead of helping Plaintiff, Lt. Kirt decided to cover up and bribe Plaintiff. Lt. Kirt told Plaintiff that if he would stop writing grievances about his deputies and send all of his inmate requests directly to him, he would do anything Plaintiff wanted or asked for. Lt. Kirt stated, "Just stop grieving." FAC at 8. Plaintiff immediately took offense and told him face-to-face to please stop the abuse against Plaintiff. Lt. Kirt said he would, but the retaliation continued, and legal mail violations against Plaintiff continued. Plaintiff never gave the deputies a hard time. As they continued to abuse him he continued to show them higher respect. Finally, Captain Ducan [not a defendant] ordered his staff to stop mistreating Plaintiff after different government agencies got involved and organized across the U.S. Plaintiff had desperately written to different

government agencies over the months about the retaliation and threats against him. The newspapers also got involved, and there was an article in the Modesto Bee. Plaintiff has a written statement by Captain Ducan ordering the mistreatment against Plaintiff to stop.

**Handcuffing by Sgt. Florres during Interview**

On February 28, 2017, Plaintiff was tightly handcuffed by Sgt. Florres from behind after he had ordered another lower-ranking deputy to do so while he interviewed Plaintiff in the Unit E interview room. When Plaintiff sat down he immediately asked Sgt. Florres if he would please loosen up the very tight handcuffs because the handcuffs were hurting his back. Plaintiff told Florres that he (Plaintiff) had a prior major spinal cord surgery and had to learn to walk all over again. Before the surgery, Plaintiff was paralyzed and in a wheelchair.

Sgt. Florres purposely ignored Plaintiff and appeared to be angry. He started to interview Plaintiff concerning a civil suit claim Plaintiff filed against Florres's lower-ranking deputies for threatening Plaintiff and retaliating against him. Plaintiff sat in a chair for approximately 20-30 minutes in great pain while being questioned. Plaintiff complied with this interview because he was afraid of Sgt. Florres and all the other deputies.

Florres intentionally tried to inflict pain on Plaintiff with the handcuffs. Florres's tactic was to stop Plaintiff from reporting the retaliation against him, and to seek revenge because Plaintiff was reporting this abuse to many different government agencies across the United States, including the NAACP. On December 5, 2016, Plaintiff reported Deputy Tiexiera [not a defendant] for his throwing inmate Ibanez against the wall while on the floor having a seizure, unresponsive, and said that if Plaintiff or any other inmate said anything they would be next. After inmate Ibanez's medical emergency, Sgt. Florres returned to the holding tank and moved Plaintiff out to the hallway tunnel because Plaintiff had told him that what he had just done was wrong and Plaintiff was going to report him. Florres's co-deputy McCarthy said, "Gradford, if you know what's good for you, you will keep your mouth shut." FAC at 11:10-12. Plaintiff feared for his life and spoke up.

Prior to that day, and afterward, there was never an inmate handcuffed for an interview in the Unit E interview room during the entire 8 months of Plaintiff's incarceration. Plaintiff has

4

been interviewed by many other staff members before and afterward, including Lt. Kirt, Sgt. Johnson [not a defendant], Sgt. Burns [not a defendant], and Sgt. Spalding [not a defendant], but was never handcuffed.

### **Dirty and Infested Showers -- Deputy Freddie**

Between April and August 2, 2017, Plaintiff repeatedly pleaded with Deputy Freddie face to face in Unit E, and also on many inmate request forms, that the six single-man showers in the unit needed to be cleaned. The showers were badly infested with small flying insects and the walls and floors were slimy. Many inmates housed in Unit E were not using the showers and instead were "bird bathing" in their cell sinks for months. FAC at 14:3. The inmates complained among themselves but were too afraid to speak up. Deputy Freddie constantly made excuses and said he would take care of the problem, but he never did. Plaintiff attempted to file a grievance against Deputy Freddie for not keeping his word. Deputy Freddie refused to sign the grievance stating that this was not a grievable offense. Plaintiff requested disinfectant cleaner and Deputy Freddie denied the request.

Plaintiff began sending inmate request kites to Lt. Kirt and Sgt. Johnson, the operation Sergeant, to no avail. Plaintiff was forced to take showers in inhumane conditions. Over the months, Plaintiff had to hang his clothes, towel, etc. on the shower doors. The small flying insects would lodge in his clothing and towel. When Plaintiff put his clothes back on the insects would bite his skin, and they were also in Plaintiff's cell.

Plaintiff was told by Lt. Kirt not to file grievances and to send him inmate request forms directly (bribes). Lt. Kirt said that if Plaintiff would stop grieving, he would do anything Plaintiff wanted. The showers were still in the same very bad condition when Plaintiff was transported to state prison on August 2, 2017.

### **Relief Requested**

Plaintiff requests a declaratory judgment, monetary damages, and costs of suit.

///
///
///

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

///

### A. Rights of Pretrial Detainees

Plaintiff was a pretrial detainee at the time of the events at issue. "[P]retrial detainees . . . possess greater constitutional rights than prisoners." Stone v. City of San Francisco, 968 F.2d 850, 857 n.10 (9th Cir. 1992); see also Gary H. v. Hegstrom, 831 F.2d 1430, 1432 (9th Cir. 1987). "If a plaintiff "had not been convicted of a crime, but had only been arrested, [then] his rights derive from the due process clause rather than the Eighth Amendment's protection against cruel and unusual punishment." Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002); see also Bell v. Wolfish, 441 U.S. 520, 537 n.16 (1979) (noting that "the Due Process Clause rather than the Eighth Amendment" is relied on in considering claims of pretrial detainees because "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions").

Unless there is evidence of intent to punish, then those conditions or restrictions that are reasonably related to legitimate penological objectives do not violate pretrial detainees' right to be free from punishment. See Block v. Rutherford, 468 U.S. 576, 584 (1984) (citing Bell, 441 U.S. at 538-39); Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008); Demery v. Arpaio, 378 F.3d 1020, 1028-29 (9th Cir. 2004) (holding that streaming live images of pretrial detainees to internet users around the world through the use of world-wide web cameras was not reasonably related to a non-punitive purpose, and thus, violated the Fourteenth Amendment); Simmons v. Sacramento Cnty. Super. Ct., 318 F.3d 1156, 1160-61 (9th Cir. 2003); Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002); White v. Roper, 901 F.2d 1501, 1504 (9th Cir. 1990); see also Florence v. Board of Chosen Freeholders of Cnty. of Burlington, 132 S. Ct. 1510, 1515-16 (2012). Order and security are legitimate penological interests. See White, 901 F.2d at 1504.

### B. Prior Screening Order

In the court's prior screening order issued on August 9, 2018, Plaintiff was advised that he alleged multiple claims in the Complaint that were largely unrelated, in violation of Rule 18(a) of the Federal Rules of Civil Procedure. Plaintiff was advised that he was barred from bringing these claims together in one lawsuit and thus, when amending the Complaint, he should

determine which related claims he wished to pursue and re-allege only those claims. Plaintiff was forewarned that if his amended complaint continued to violate Rule 18(a), the court would decide which claims shall proceed.

Plaintiff's First Amended Complaint continues to violate Rule 18(a). Plaintiff brings three claims that arise out of separate transactions or occurrences against different defendants, (1) against Lt. Kirt for attempting to cover up retaliation, (2) against Sgt. Florres for tightly handcuffing Plaintiff during an interview, and (3) against Deputy Freddie for not cleaning the dirty and infested showers. Plaintiff may not proceed in one action on a myriad of unrelated claims against different staff members.[1]

The court shall recommend that this case proceed only on Plaintiff's claim against defendant Sgt. Florres for tightly handcuffing Plaintiff, and that Plaintiff's other claims and defendants be dismissed for violation of Rule 18(a). As discussed below, the court finds that Plaintiff states a cognizable claim in the First Amended Complaint against defendant Sgt. Florres for use of excessive force in violation of the Fourteenth Amendment.

### C. **Excessive Force -- Fourteenth Amendment Claim**

Pretrial detainees are entitled to Fourteenth Amendment protections. See Seling v. Young, 531 U.S. 250, 265 (2001) ("[D]ue process requires that the conditions and duration of confinement under the [civil confinement act] bear some reasonable relation to the purpose for which persons are committed."); Jones v. Blanas, 393 F.3d 918, 933 (9th Cir. 2004) ("Civil status means civil status, with all the Fourteenth Amendment rights that accompany it."). A civil detainee is entitled to "more considerate treatment" than his criminally detained counterparts. Jones, 393 F.3d at 931 (quoting Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982).)

---

[1] "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

The Supreme Court has held that a pretrial detainee's claim that he was subjected to excessive force arises under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2475 (2015). In order to prevail on an excessive force claim, a pretrial detainee must show that the force purposely or knowingly used against him was objectively unreasonable. Id. at 2473. Whether the force is objectively unreasonable turns on the "facts and circumstances of each particular case." Id. at 2473 (quoting Graham, 490 U.S. at 396). This determination is to be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Kingsley, 135 S. Ct. at 2473. "A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" Id. at 2473 (quoting Bell, 441 U.S. at 540).

In the Ninth Circuit, tight handcuffing can constitute excessive force. See, e.g., Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993); Hansen v. Black, 885 F.2d 642, 645 (9th Cir. 1989); LaLonde v. County of Riverside, 204 F.3d 947, 960 (9th Cir. 2000); Thompson v. Lake, 607 F. App'x 624, 625 (9th Cir. 2015) (quoting Wall v. Cnty. of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004) ("It is clearly established that 'overly tight handcuffing can constitute excessive force.'"); see also Meredith v. Erath, 342 F.3d 1057, 1063 (9th Cir. 2003) (holding that "to place and keep [a person] in handcuffs that were so tight that they caused her unnecessary pain violated her Fourth Amendment right to be free from an unreasonable seizure"). Even assuming that Plaintiff was required to complain that the handcuffs were too tight, his request that Sgt. Florres loosen the handcuffs was sufficient to satisfy this requirement. See Wall, 364 F.3d at 1109-10, 1112. Also, to state a claim, Plaintiff is not required to show that the handcuffs caused visible physical injury; it is enough that the handcuffs caused him unnecessary pain. See Meredith, 342 F.3d at 1060, 1062-63.

///

///

The court finds that Plaintiff's allegations against defendant Sgt. Florres in the First Amended Complaint are sufficient to state a cognizable claim for tight handcuffing in violation of the Fourteenth Amendment.

### D. **Request for Declaratory Judgment**

Besides monetary damages, Plaintiff requests a declaratory judgment as relief. Such a request should be denied because it is subsumed by Plaintiff's damages claim. See Rhodes v. Robinson, 408 F.3d 559, 565-66 n.8 (9th Cir. 2005) (because claim for damages entails determination of whether officers' alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); see also Fitzpatrick v. Gates, No. CV 00-4191-GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001) ("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]") Therefore, Plaintiff is not entitled to declaratory relief in this case. Based on the nature of the claims at issue in this action, which involve past conduct, Plaintiff is confined to seeking money damages for the violations of his federal rights.

## V. CONCLUSION AND RECOMMENDATIONS

The court finds that Plaintiff states a cognizable claim in the First Amended Complaint for use of excessive force against defendant Sergeant Florres. The court also finds that Plaintiff's other claims are barred from inclusion in this suit because they are unrelated claims in violation of Rule 18(a) of the Federal Rules of Civil Procedure. Therefore, the court shall recommend that Plaintiff proceed with the excessive force claim, and that all other claims and defendants be dismissed from this action for violation of Rule 18(a).

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. This case proceed with the Fourteenth Amendment excessive force claim against defendant Sergeant Florres for monetary damages;

2. All other claims and defendants be dismissed from this action as unrelated claims in violation of Rule 18(a) of the Federal Rules of Civil Procedure;

3. Defendants Lieutenant Kirt and Deputy Freddie and all of the claims against them be dismissed from this action under Rule 18(a); and

4. This case be referred back to the Magistrate Judge for further proceedings, including initiation of service of process.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** from the date of service of these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 10, 2019**           **/s/ Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE